```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
SERGIO LOPEZ,

                Petitioner,            MEMORANDUM & ORDER
                                       07-CV-4145 (JS)
        -against-

DAVID UNGER, Superintendent
Orleans Correctional Facility,

                Respondent.
--------------------------------X
APPEARANCES:
For Petitioner:    Sergio Lopez, pro se
                   05-A-1895
                   Orleans Correctional Facility
                   35-31 Gaines Basin Road
                   Albion, NY 14411-9199

For Respondent:    Kathleen M. Rice, Esq.
                   District Attorney, Nassau County
                   262 Old Country Road
                   Mineola, NY 11501
```

SEYBERT, District Judge:

Sergio Lopez ("Lopez" or "Petitioner"), proceeding pro se, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons below, the Petition is DENIED.

BACKGROUND

I. Factual Background

Shelton Smith ("Smith"), the victim, was employed as a security guard at Roosevelt Field. (Trial Transcript ("Tr.") 221.) On August 2, 2003, when his shift ended between 10:20 and 10:30 p.m., he walked to a bus stop to go home to Queens. (Tr. 221-22.) Smith boarded a bus and after several minutes, he realized he was

on the wrong bus. (Tr. 222-23.) He, then, exited at the next stop and headed back to catch the correct bus to Queens. (Tr. 224.) As he jogged back to the bus stop, two males approached him. (Tr. 224.) One of the men, later identified as Lopez, held up his right hand and said: "Stop. I have a gun. Stop. Don't move." (Tr. 225.) Although Smith did not see a gun, as Petitioner's sleeve completely covered his hand, he believed that Petitioner was armed based on his gestures. (Tr. 245-46.) Lopez put his hand in Smith's pocket and asked for his money while the other assailant stood at Smith's left side holding a baseball bat. (Tr. 231-32.)

At this time, a police car approached. (Tr. 242.) Lopez and his cohort began to walk away from Smith. (Tr. 244.) Smith flagged down the police officer and stated that he was being robbed and that the men had a gun. (Id.) Lopez and the other assailant ran. (Id.) The Police Officer, Mark Vitelli, immediately backed up the police car until he was even with the assailants and looked at them. (Tr. 306.) The two men, then ran through yards between houses, while Officer Vitelli stopped his car and pursued them on foot. (Tr. 309.) After running to the side yard, Officer Vitelli radioed for assistance. (Tr. 309.) Officers Philip Kouril and Charles DeCaro responded, and performed a yard-by-yard search for the two men based upon Officer Vitelli's description. (Tr. 346.) Approximately 20 minutes into the search, Officer DeCaro found an

individual lying on his belly, face-down behind a barbeque pit in a backyard. (Tr. 347-48.) After Officer Decaro placed the individual in handcuffs, the individual stated, "I got greedy. I fucked up." (Tr. 350.) Officer Decaro identified that individual in court as Lopez. (Tr. 349.) Officer Vitelli and Smith were called to the scene where Lopez was found. (Tr. 248-49, 311.) Officer Vitelli recognized the man as one of the two men he saw running away from him earlier. (Tr. 311-312.) Likewise, Smith recognized the individual as the one who told him he had a gun. (Tr. 249-50.) Both Lopez and Vitelli later identified that person in court as Lopez.[1] (Tr. 249-50, 311-12.)

II. Procedural History

Following a jury trial, Petitioner was convicted of one count of Attempted Robbery in the First Degree and two counts of Attempted Robbery in the Second Degree. Subsequently, on February 25, 2005, Lopez, a prior felony offender, was sentenced to ten years for the Attempted Robbery in the First Degree conviction, and concurrent terms of seven years for each Attempted Robbery in the Second Degree conviction, as well as two five-year terms of post-release supervision that would run concurrently with each other.

---

[1] The officers continued to search for Lopez's cohort but were unsuccessful. (Tr. 356.) Additionally, the alleged gun that Lopez carried was never found. (Tr. 330.)

3

On appeal to the Appellate Division, Second Department, Petitioner raised the following arguments: (1) the verdict was against the weight of evidence; (2) the trial court's ruling, pursuant to People v. Sandoval, 34 N.Y.2d 371 (1974), deprived him of a fair trial; and (3) the trial court's ruling, pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), deprived him of a fair trial. On February 6, 2007, the Appellate Division, Second Department affirmed Lopez's conviction. People v. Lopez, 37 A.D.3d 496 (2d Dept. 2007). The state court held that: (1) the verdict was not against the weight of the evidence; (2) the Petitioner's challenge to the Sandoval ruling was without merit as the lower court properly balanced the "probative value of Defendant's prior crimes on the issue of his credibility" with possible prejudice to Petitioner; and (3) Petitioner's Batson claim was without merit. Id. at 497. Lopez, then, filed a letter requesting leave to appeal to the New York Court of Appeals. In this application, Petitioner submitted only the Batson claim for review. The Court of Appeals denied leave to appeal on June 14, 2007. People v. Lopez, 9 N.Y.3d 847 (2007). On September 28, 2007, Petitioner filed the instant petition that seeks a writ of habeas corpus on the same three grounds previously submitted to the Appellate Division.

DISCUSSION

I.  Federal Habeas Review of State Convictions

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when 'it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'"  Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).  A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially distinguishable from a decision

5

of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (citing Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. (citing Williams, 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." Id.

II. Petitioner's Claims

A. Weight of the Evidence

Lopez contends Smith's testimony was not worthy of belief because it was contradictory and improbable, and therefore, the jury's verdict was against the weight of the evidence. This claim, however, is not reviewable because it does not present a federal

6

question.

A weight of the evidence claim is grounded solely in state law, and thus, does not present a federal question. See N.Y. C.P.L. § 470.15(5); Sweeney v. Superintendent of the Watertown Corr. Facility, No. 07-CV-0663, 2007 WL 2176987, at *8 (E.D.N.Y. July 27, 2007); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Indeed, "[a] challenge to a verdict based on the weight of the evidence differs from one based on the sufficiency of the evidence: [T]he weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." Hyatt v. Bellnier, No. 09-CV-6594, 2009 WL 3423359, at *10 (S.D.N.Y. Oct. 23, 2009) (internal citations and quotations omitted). Furthermore, the Second Circuit held that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). Accordingly, Petitioner's claim that the verdict was against the weight of the evidence is denied.

B. Sandoval Ruling

Petitioner also asserts that he was denied a fair trial because the court erroneously rejected his Sandoval claim.

Specifically, Petitioner contends that the court failed to adequately weigh the applicable factors, and in any event, made no indication in its ruling that it balanced any of the factors pursuant to People v. Sandoval, 34 N.Y.2d 371. The trial court held that the State could cross-examine Petitioner about his prior convictions for menacing, attempted assault, and criminal possession of a weapon. As a result, Petitioner contends that he chose not to testify.

A well-known barrier to federal habeas relief is the failure of a petitioner to exhaust his or her claims. Under the exhaustion doctrine, "a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim." Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). Based upon principles of comity, the doctrine is "designed to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982).

The test for whether a petitioner exhausted his claim has two stages. The petitioner, first, "must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) Second, the petitioner, "must have

8

utilized all available mechanisms to secure appellate review of the denial of that claim." Id.  Furthermore, in the event petitioner specifies only certain issues in his letter seeking leave to appeal a conviction to the New York Court of Appeals, he, then, waives any remaining claims in his original appellate brief.  See Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  The burden of proving exhaustion lies with the habeas petitioner.  See Colon v. Johnson, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998).

If the petitioner has failed to exhaust state remedies, the Court must consider whether the claims should be "deemed exhausted . . . [as] procedurally barred under state law." Ramirez v. Attorney General of the State of New York, 280 F.3d 87, 94 (2d Cir. 2001); Grey, 933 F.2d at 120.  A procedurally defaulted claim will generally be dismissed unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom; or, (2) that failure to consider the claim will result in a fundamental miscarriage of justice.  See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  If the petitioner is unable to satisfy this standard, the claim is barred from federal review.  See id.

Lopez did not seek review of his Sandoval claim by the New York Court of Appeals.  Because Petitioner did not utilize all available means to secure appellate review of his Sandoval claim,

9

he did not meet the second element of exhaustion. Petitioner's <u>Sandoval</u> claim, however, is deemed exhausted as it is now procedurally barred under New York law. Petitioner does not assert any cause for the default or any prejudice therefrom. Moreover, the "fundamental miscarriage of justice" exception, generally only established when a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense," <u>Dretke v. Haley</u>, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852, 158 L. Ed. 2d 659 (2004) (internal quotations and citations omitted), was not established here. As a result, Petitioner's <u>Sandoval</u> claim is procedurally barred from federal habeas review as this Court "will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus," <u>Nunez v. Conway</u>, 473 F. Supp. 2d 465, 470 (S.D.N.Y. 2007).

In any event, Petitioner's <u>Sandoval</u> claim does not raise a constitutional issue cognizable under habeas review. A <u>Sandoval</u> claim is only reviewable in a habeas corpus proceeding when the petitioner testifies at trial and is cross-examined about his prior bad acts or convictions. See <u>Luce v. United States</u>, 469 U.S. 38, 43, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."); <u>Grace v. Artuz</u>, 258 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2003); <u>Delgado v. Duncan</u>, No. 02-CV-

10

4929, 2003 WL 23185682, at *4 (E.D.N.Y. Nov. 4, 2003).

Accordingly, Petitioner's claim that he was denied a fair trial because of the trial court's Sandoval ruling is denied.

III. Batson Ruling

Finally, Lopez argues that he did not receive a fair trial because of the trial court's Batson ruling. The Supreme Court ruled that the Equal Protection Clause of the Fourteenth Amendment "forbids the prosecutor to challenge potential jurors solely on account of their race." Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The Supreme Court established a three-step analysis for determining whether the exercise of a peremptory challenge violates the Equal Protection Clause:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

Hernandez v. New York, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (citing Batson, 476 U.S. at 96-98).

"Once a trial judge finds that a prosecutor has exercised his peremptory challenges without discriminatory intent, that

11

finding 'may not be disturbed on appeal unless it is clearly erroneous.'" United States v. Brown, 352 F.3d 654, 661 (2d Cir. 2003) (quoting United States v. Franklyn, 157 F.3d 90, 97 (2d Cir. 1998).

During Lopez's voir dire, the prosecutor used a peremptory challenge to remove an African-American juror during the second round of jury selection. (Tr. 121.) The prosecutor also used a peremptory challenge earlier on the only other African-American juror to be questioned; thus, he used peremptory challenges on both individuals. (Tr. 123.) Defense counsel requested that the court seat the African-American juror unless the prosecutor provided a racially-neutral reason for her challenge of the second African-American juror. (Tr. 123-24.) In the alternative, defense counsel asked to discharge the entire jury panel. (Tr. 124.) The prosecutor's explanation for striking the juror in question was that she did not find out enough information about the potential juror and thought of the juror as a "wild card." (Tr. 125.) The Court, not satisfied with this explanation, granted Petitioner's Batson application and seated the juror. (Tr. 127-28.)

Petitioner contends that even though the trial court granted his Batson application, and sat the juror in question, he nevertheless, was denied a fair trial. There are "two appropriate

12

remedies for a Batson violation: 1) the discharge of the venire and commencement anew of jury selection, and 2) the disallowance of the discriminatory challenges and resumption of the jury selection with those jurors reinstated to the venire." Caston v. Costello, 74 F. Supp. 2d 262, 271 (E.D.N.Y. 1999) (citing Batson, 476 U.S. at 99 n. 24). The court chose the latter option in the instant case. This remedy afforded Lopez his right to equal protection. It was not shown that the selection of any other members of the jury had in any way been tainted by the alleged discrimination. Therefore, the Batson claim is without merit. Accordingly, Petitioner's claim that the trial court's Batson ruling denied him a fair trial is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Lopez's Petition for writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September 30, 2010
         Central Islip, New York